IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

No. 24-4102

————————————

UNITED STATES OF AMERICA,

*Appellant*,

v.

CONOR BRIAN FITZPATRICK,

*Appellee*.

————————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Leonie M. Brinkema, District Judge*

————————————

OPENING BRIEF OF THE UNITED STATES

————————————

Jessica D. Aber
United States Attorney

Joseph Attias
Jacqueline R. Bechara
Lauren Pomerantz Halper
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

Aarash A. Haghighat
Senior Counsel
Computer Crime and
Intellectual Property Section
U.S. Department of Justice
1301 New York Avenue, NW
Washington, DC 20530

*Attorneys for the United States of America*

# Table of Contents

**Page**

Table of Authorities ............................................................................... iii

Jurisdictional Statement ...........................................................................1

Introduction .............................................................................................1

Issue Presented ........................................................................................3

Statement of the Case ..............................................................................3

    A.    Fitzpatrick makes a name for himself on Raidforums. .........................3

    B.    Fitzpatrick creates BreachForums as a replacement for Raidforums. ..................................................................................4

    C.    Fitzpatrick serves as a broker of hacked and stolen information. ..........7

    D.    Fitzpatrick provides further support to BreachForums users. ..............11

    E.    Fitzpatrick possesses child pornography. ...........................................11

    F.    Fitzpatrick is arrested and pleads guilty. ...........................................12

    G.    Fitzpatrick violates the conditions of his pretrial release by using an unauthorized phone and downloading a VPN service. .........15

    H.    The parties submit sentencing position papers. ..................................18

    I.    The district court sentences Fitzpatrick to a time served sentence of 17 days .........................................................................24

Summary of Argument .........................................................................28

Argument................................................................................................30

Fitzpatrick's sentence is substantively unreasonable. ............................30

A.    The district court erred in focusing excessively on Fitzpatrick's mental health condition to the exclusion of other sentencing factors. .................................................................33

　　1.   The district court's sentence fails to account for the seriousness of Fitzpatrick's offenses or provide just punishment. ....................................................36

　　2.   The district court's sentence fails to afford any specific deterrence or protect the public from further crimes. ..................41

　　3.   The district court's sentence undermines respect for the law and fails to afford any general deterrence. ....................................46

　　4.   The district court's sentence creates significant sentencing disparities. ...............................................51

B.    The district court's unsupported conclusions about Fitzpatrick's mental health condition failed to justify its significant downward variance. .............................................................53

Conclusion ................................................................................58

Statement Regarding Oral Argument ...................................................60

Certificate of Compliance .........................................................60

# Table of Authorities

Page

## Cases

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)........................................45

*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017)....................................................38

*Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252 (4th Cir. 2024)........................38

*Gall v. United States*, 552 U.S. 38 (2007) .................................................. 30-31, 52

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613
     (4th Cir. 2018) ...............................................................................................38

*In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023)...........................................38

*New York v. Ferber*, 458 U.S. 747 (1982) ..............................................................38

*Rita v. United States*, 551 U.S. 338 (2007)..............................................................31

*Savic v. United States*, 918 F.2d 696 (7th Cir. 1990) .............................................45

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008).............................. 31, 57-58

*United States v. Bistline*, 665 F.3d 758 (6th Cir. 2012)...................................... 47, 52

*United States v. Burgess*, 684 F.3d 445 (4th Cir. 2012) .........................................38

*United States v. Camiscione*, 591 F.3d 823 (6th Cir. 2010) ...................................47

*United States v. Carver*, 916 F.3d 398 (4th Cir. 2019)...........................................38

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ...........................................57

*United States v. Ceasar*, 10 F.4th 66 (2d Cir. 2021) ..............................................43

*United States v. Christman*, 607 F.3d 1110 (6th Cir. 2010) ...................................40

*United States v. Crisp*, 454 F.3d 1285 (11th Cir. 2006) .........................................40

*United States v. Curry*, 461 F.3d 452 (4th Cir. 2006) ............................................58

*United States v. Demma*, 948 F.3d 722 (6th Cir. 2020)..........................................34

*United States v. Dierks*, 978 F.3d 585 (8th Cir. 2020) ...........................................11

*United States v. Engle*, 592 F.3d 495 (4th Cir. 2010)....................................... 32, 57

*United States v. Evans*, 526 F.3d 155 (4th Cir. 2008) ............................................30

*United States v. Fowler*, 948 F.3d 663 (4th Cir. 2020) ...........................................44

*United States v. George*, No. 19-4841, 2021 WL 5505404 (4th Cir. 2021) ................................................................ 31, 33, 46

*United States v. Goff*, 501 F.3d 250 (3d Cir. 2007) ................................... 47

*United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007) ................................ 40, 47

*United States v. Green*, 436 F.3d 449 (4th Cir. 2006) ................................... 46

*United States v. Hampton*, 441 F.3d 284 (4th Cir. 2006) ................................ 32, 44

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) ............................... 45, 56

*United States v. Howard*, 773 F.3d 519 (4th Cir. 2014) ................................. 31

*United States v. Kuhlman*, 711 F.3d 1321 (11th Cir. 2013) ................................ 50

*United States v. Livesay*, 587 F.3d 1274 (11th Cir. 2009) ............................... 51

*United States v. Maddox*, 48 F.3d 791 (4th Cir. 1995) ................................... 54

*United States v. Martin*, 455 F.3d 1227 (11th Cir. 2006) ................................ 48

*United States v. Medearis*, 451 F.3d 918 (8th Cir. 2006) ................................ 47

*United States v. Morace*, 594 F.3d 340 (4th Cir. 2010) ................... 39-40, 47, 57

*United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006) ................... 31, 35, 57

*United States v. Nance*, 957 F.3d 204 (4th Cir. 2020) ................................... 30

*United States v. Provance*, 944 F.3d 213 (4th Cir. 2019) ................................ 31, 57

*United States v. Schrank*, 975 F.3d 534 (6th Cir. 2020) ................................. 39

*United States v. Strieper*, 666 F.3d 288 (4th Cir. 2012) ........................... 39, 40, 47

*United States v. Tucker*, 473 F.3d 556 (4th Cir. 2007) .................................. 39

*United States v. Wooden*, 693 F.3d 440 (4th Cir. 2012) ................................. 43

*United States v. Zuk*, 874 F.3d 398 (4th Cir. 2017) ......................... *passim*

*Wolfe v. Clarke*, 718 F.3d 277 (4th Cir. 2013) ......................................... 55

## Statutes

18 U.S.C. § 1029(a)(6) ................................................................. 13

18 U.S.C. § 1029(b)(2) ................................................................ 12, 13

18 U.S.C. § 2252(a)(4)(B) ............................................................. 13, 19

18 U.S.C. § 2252(b)(2) ................................................................. 13

18 U.S.C. § 3231 ................................................................................1

18 U.S.C. § 3553(a) ................................................................ *passim*

18 U.S.C. § 3553(a)(1) ......................................................................40

18 U.S.C. § 3553(a)(2)(A) ...................................................... 36, 41, 46

18 U.S.C. § 3553(a)(2)(B) ........................................................... 41, 46

18 U.S.C. § 3553(a)(2)(C) ................................................................41

18 U.S.C. § 3553(a)(6) ......................................................................58

18 U.S.C. § 3559(g)(1) ................................................................ 13, 19

18 U.S.C. § 3742(b) ..........................................................................1

28 U.S.C. § 1291 ...............................................................................1

First Step Act of 2018, Pub. L. No. 115-391, § 101, 132 Stat. 5194,
    5195 .........................................................................................55

First Step Act of 2018, Pub. L. No. 115-391, § 606, 132 Stat. 5194,
    5244 .........................................................................................57

**Guidelines**

U.S.S.G. § 2B1.1(a)(2) ......................................................................19

U.S.S.G. § 2B1.1(b)(1)(H) ................................................................19

U.S.S.G. § 2B1.1(b)(2)(A)(i) ............................................................19

U.S.S.G. § 2B1.1(b)(4) ......................................................................19

U.S.S.G. § 2B1.1(b)(10)(C) ..............................................................19

U.S.S.G. § 2B1.1(b)(11)(B)(i) ..........................................................19

U.S.S.G. § 2B1.1(b)(18)(B) ..............................................................19

U.S.S.G. § 2G2.2(a)(1) ......................................................................19

U.S.S.G. § 2G2.2(b)(2) ......................................................................19

U.S.S.G. § 2G2.2(b)(6) ......................................................................20

U.S.S.G. § 2G2.2(b)(7)(D) ................................................................20

U.S.S.G. § 3B1.1(a) ..........................................................................19

U.S.S.G. § 3C1.4 ...............................................................................19

U.S.S.G. § 3E1.1(a)............................................................................. 14, 20

U.S.S.G. § 3E1.1(b) ................................................................................14

## Jurisdictional Statement

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. This Court has jurisdiction to review the government's appeal of the defendant's sentence under 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291.

## Introduction

The defendant, Conor Brian Fitzpatrick, created and operated BreachForums, the largest English-language data breach site of its kind. Fitzpatrick created BreachForums to traffic, or facilitate the trafficking of, stolen or hacked databases containing personal information. At its height, BreachForums boasted almost one thousand data sets, comprised of billions of individual records. Fitzpatrick created BreachForums almost immediately after a similar predecessor website, Raidforums, was seized by the Federal Bureau of Investigation (FBI) and its founder was arrested. Fitzpatrick and his conspirators earned nearly $700,000 through the operation of BreachForums. Fitzpatrick's crimes left numerous victims, many of whom suffered substantial monetary and reputational loses. Fitzpatrick also downloaded and stored child pornography, including videos of prepubescent girls masturbating. In doing so, he perpetuated yet another set of victims.

Fitzpatrick pleaded guilty and immediately began violating the conditions of his release. Specifically, Fitzpatrick used an unauthorized iPhone to ███████ ███████████████████████████ and downloaded a prohibited program to

obfuscate his identity. ████████████████████████████

████████████████████████████████████████.

For his serious crimes and unrepentant behavior, the district court imposed on Fitzpatrick a "time-served" sentence of 17 days. This sentence, in the district court's words, was "an extensively variant sentence" from the 188- to 235-month Guideline range. (JA175) The court relied exclusively on Fitzpatrick's recent ██████████ and its unsupported belief that the Bureau of Prisons (BOP) could not accommodate an inmate with ██████, such that Fitzpatrick would be a "disaster" and "ravaged" in prison. (JA174) As explained below, the district court's sentence is substantively unreasonable on multiple levels.

The district court's singular focus on Fitzpatrick's mental health was in error. And the district court's time-served sentence fails to account for the seriousness of Fitzpatrick's offenses and the many victims harmed by his actions. Nor does the sentence send a message of deterrence, either to Fitzpatrick or to would-be cybercriminals and child pornographers. Fitzpatrick's website enabled cybercriminals to profit off the fruits of their data breaches, and Fitzpatrick readily participated in both the maintenance of the site and the transactions occurring therein. While on pretrial release, Fitzpatrick demonstrated an inability to control himself and a lack of respect for the law by immediately violating the conditions of his release ████████████████. Finally, the district court's sentence fails to

protect the public from further crimes given that the court sent Fitzpatrick straight back to the very home in which he committed his crimes and violated pretrial release.

All told, the district court's 17-day time-served sentence fails to satisfy virtually every relevant sentencing factor. To restore respect for the law, promote just punishment and deterrence, and protect public safety, this Court must vacate the sentence.

## Issue Presented

Whether the district court abused its discretion in sentencing Fitzpatrick to a 17-day time-served sentence for possessing child pornography and creating and operating the largest English-language data breach forum of its kind, particularly considering Fitzpatrick's related pretrial release violations.

## Statement of the Case

### A.     Fitzpatrick makes a name for himself on Raidforums.

Fitzpatrick is a 21-year-old resident of New York.  (JA120) In October 2020, Fitzpatrick, using the online moniker "Pompompurin," began posting on "Raidforums," "a popular [online] marketplace for cybercriminals to buy, sell, and trade contraband, including stolen access devices, means of identification, hacking tools, breached databases, and other illegal services." (JA236; JA120) Over time, Fitzpatrick developed a reputation on Raidforums for offering to sell hacked databases. (JA120)

3

In March 2022, a grand jury in the Eastern District of Virginia charged Raidforums' founder and administrator, Diogo Santos Coelho, with six access device and identity theft counts pertaining to his operation of Raidforums.[1] (JA236) Around one month prior to the unsealing of this indictment, the FBI seized multiple domain names used to host Raidforums, effectively shutting down the website. (JA236)

### B.     Fitzpatrick creates BreachForums as a replacement for Raidforums.

In response to the FBI's shuttering of Raidforums, Fitzpatrick, again using the online moniker "Pompompurin," created "BreachForums" to serve as a replacement for Raidforums. (JA120–JA121) From around March 2022 to March 2023, Fitzpatrick controlled and acted as lead administrator of BreachForums. (JA121) BreachForums operated as an illegal marketplace where its members could sell, purchase, and trade hacked or stolen data. (JA121) Fitzpatrick created BreachForums to traffic, or facilitate the trafficking of, stolen or hacked databases. (JA121)

Fitzpatrick designed and administered the site's software and computer infrastructure. (JA123–JA124) Among other things, Fitzpatrick established and enforced the site's rules and created and managed sections for buying and selling

---

[1] ███████████████████████████████████████████████

stolen data. (JA123–JA124) To host and provide access to his website, Fitzpatrick registered multiple domain names, such as "breached.vc," "breached.to," "breachedforums.com," "breachedforums.net," and "breachforums.org." (JA124) Fitzpatrick hired, paid, and managed a staff of rotating moderators to assist in operating and administering the site. (JA121) Prior to being taken offline in March 2023, BreachForums boasted approximately 333,412 members. (JA123) It was the largest English-language data breach forum of its kind. (JA123)

Members on BreachForums provided access to stolen access devices, tools for committing cybercrimes, breached databases, and other services for gaining unauthorized access to victim systems. (JA121) BreachForums allowed its users to post solicitations for hacked or stolen data, exchange direct messages between buyers and sellers, purchase access to stolen data that BreachForums itself controlled, and arrange other services related to the illegal transfer of stolen data and contraband. (JA121) Fitzpatrick deliberately operated BreachForums to be an attractive marketplace for cybercriminals to purchase, sell, or trade stolen or hacked information. (JA121) During his tenure as founder and operator of BreachForums, Fitzpatrick knew that the access devices the site hosted and trafficked were either stolen or obtained with the intent to defraud. (JA121)

Fitzpatrick organized BreachForums into various thematic sections and subsections. For example, BreachForums' "Marketplace" section and "Leaks

Market" subsection offered users the opportunity to buy and sell hacked or stolen data, tools for committing cybercrimes, and other illicit material. (JA122) BreachForums' Marketplace also offered bank account information, social security numbers, other forms of personal identifying information (PII) and login information for compromised online accounts, such as the usernames and passwords for service providers and merchants. (JA122)

BreachForums members used the Marketplace to disseminate their illicit wares. For example, in March 2022, one user using the moniker "USDoD" posted the personal details of approximately 87,760 members of InfraGard, a partnership between the FBI and private sector entities devoted to protecting critical infrastructure. (JA122) In January 2023, another user posted the names and contact information of approximately 200 million users of a major, U.S.-based social networking site. (JA122) That same month, another user published an offer consisting of approximately 20 million user records, including subscriber names, email addresses, phone numbers, password reset tokens, and hashed passwords, for a company that controls two U.S.-based background check services. (JA266–JA267) In March 2023, another user published the names, dates of birth, social security numbers, employment information, and health insurance information of tens of thousands of U.S. citizens obtained from a compromised health insurance exchange. (JA122)

BreachForums' other sections, such as its "Cracking," "Leaks," and "Tutorials" sections, allowed users to post stolen or hacked data and included discussion material on the tools and techniques used to hack and exploit information online. (JA122)

### C.    Fitzpatrick serves as a broker of hacked and stolen information.

Fitzpatrick did not just create BreachForums and then let it run unattended. Instead, he actively participated in its transactional affairs. Broadly, Fitzpatrick operated as a broker between buyers and sellers, approved and uploaded breached databases, and facilitated transactions between members seeking to buy or sell illicit material, including by verifying and authenticating stolen databases. (JA123–JA124)

For example, Fitzpatrick offered a middleman service in which he acted as the trusted intermediary between users buying and selling hacked or stolen information. (JA124) By allowing transactors to verify the means of payment and the nature of the information bought and sold, Fitzpatrick's middleman service helped facilitate and encourage the dissemination of hacked or stolen data on BreachForums. (JA124) Fitzpatrick's standard middleman process required members to notify him of the product they intended to trade. (JA124)

Fitzpatrick also oversaw the activity of members seeking to upload databases of information. (JA124) BreachForums' "Official" section allowed users to purchase

stored databases through its "Content Distribution Network." (JA124) At its height, the Official section claimed to host 888 data sets, consisting of 14 billion individual records. (JA124) These databases included information on U.S. and foreign companies, organizations, and government agencies. (JA124) BreachForums administered a "credit" system for purchasing these databases. (JA124) Users could purchase credits on the site or earn them by contributing content. (JA124) Users were required to contact Fitzpatrick directly and obtain his personal approval before posting any databases. (JA124)

In May 2022, Fitzpatrick messaged a BreachForums user and confirmed that a database from a U.S.-based internet hosting and security services company had been approved and placed on the Official Content Distribution Network. (JA125) The database contained names, addresses, phone numbers, usernames, password hashes, and email addresses for approximately 8,000 customers, as well as credit card information for approximately 1,900 customers. (JA125–JA126) With Fitzpatrick's approval, this database was offered for sale on BreachForums. (JA125)

In October 2022, an FBI online covert employee (OCE) purchased and downloaded the database from BreachForums' Official Content Distribution Network. (JA126) The archive included a link to the database along with a message stating, "[p]lease do the right thing, if you share this database please mention where

8

it was downloaded from! At the end of the day with your help the more users we get the more high quality/private databases will be leaked." (JA126)

In July 2022, Fitzpatrick publicized his "Official Middleman/guarantor Service," announcing the process through which he would broker deals between buyers and sellers of data. (JA126–JA127) Through this announcement, Fitzpatrick stated that he had already performed over $430,000 in middleman transactions with "zero issues." (JA126–JA127) That same month, an OCE reviewing BreachForums discovered user "expo2020" offering to sell "USA FULLZ. Name.ssn.dob.address.dl." (JA127) Thereafter, the OCE spent about one week exchanging messages with Fitzpatrick, who agreed to broker a deal between the OCE and "expo2020." (JA127) The OCE later sent "expo2020" $5,000 through Fitzpatrick for the PII of 15 million U.S. persons, including birth dates, social security numbers, and bank information. (JA127) Fitzpatrick only released the OCE's payment to "expo2020" after the OCE confirmed he had received sensitive personal information that would be used to commit financial crimes. (JA127)

The next month, an OCE reviewing BreachForums discovered user "jigsaw" offering to sell "[a]ccess to a US healthcare company accounting system (contains US citizens documents)." (JA127–JA128) The OCE and "jigsaw" later enlisted Fitzpatrick to act as middleman for the transaction. (JA128) In a subsequent private conversation, Fitzpatrick reassured the OCE that his payment would only reach the

seller once the OCE confirmed that the information he purchased was what the seller purported it to be, in this case, credit card numbers, email addresses, names, addresses, and phone numbers. (JA128) Fitzpatrick then brokered the deal, after which "jigsaw" provided a link to files that included a means to gain apparent access to the U.S. health care company's account system, as well as a file containing driver's license photos, insurance cards, and credit cards for approximately 13 individuals obtained from the victim network. (JA128)

In September 2022, Fitzpatrick officially announced the process for publishing data on BreachForums' Content Distribution Network. (JA125) Through that announcement, Fitzpatrick stressed that uploads should not be available on other websites, generally consist of at least 10,000 records, and that users should provide the month and year of the breach. (JA125) Fitzpatrick also encouraged users to provide a news article concerning the breach or a disclosure notice from the breached website, the exact date on which the breach occurred, the name of the individual responsible for the initial breach, and the vulnerability used to obtain the breached data. (JA125) Fitzpatrick explained that if users could meet these requirements, they should contact him, and he would upload their database to the "Official" portion of BreachForums. (JA125) As he explained, "[g]etting your database on [O]fficial will get you a lot more credits since people know the links will be active and working, and that the breach is verified." (JA125)

Fitzpatrick and his co-conspirators gained at least $698,714 through his administration and operation of BreachForums. (JA124)

### D. Fitzpatrick provides further support to BreachForums users.

In addition to brokering deals on BreachForums, Fitzpatrick provided its users other forms of support to further their illicit activity. For example, in May 2022, Fitzpatrick agreed to delete the Internet Protocol (IP) address of a user wary of law enforcement activity on the site. (JA129) That same month, Fitzpatrick privately promised another user that he would falsify registration information should law enforcement seek it, noting that he "doubt[ed] law enforcement would even bother making legal requests to a hacking forum lmao."[2] (JA129) Finally, in September 2022, Fitzpatrick advised a BreachForums user seeking advice on how to monetize a breached e-commerce database that included approximately 16 million records that he should "try getting money out of them first, and if they refuse try selling it." (JA129)

### E. Fitzpatrick possesses child pornography.

During the period in which Fitzpatrick administered and operated BreachForums, he also downloaded and stored child pornography on his laptop. (JA130) Fitzpatrick saved 26 files containing depictions of minors engaged in

---

[2] The phrase "lmao" is typically understood to mean "laughing my ass off." *See United States v. Dierks*, 978 F.3d 585, 593 (8th Cir. 2020).

sexually explicit conduct in two different folders on his laptop. (JA130) Many of the files bore titles indicative of their contents, such as "14yo," "15yo," or "Hebephilia." (JA130) One video, titled "13y-fully-nude," depicted a minor female exposing her genitals and masturbating. (JA130) Another video, titled "Girl_Hebephilia," depicted two nude prepubescent girls masturbating. (JA130)

## F.    Fitzpatrick is arrested and pleads guilty.

In March 2023, about one year after Fitzpatrick created BreachForums as a replacement for Raidforums, the FBI arrested him in New York on a criminal complaint charging conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2). (JA193–JA223) Fitzpatrick made his initial appearance in the Southern District of New York and was released on a personal recognizance bond and ordered to comply with pretrial supervision and various other conditions of release. (JA11–JA17) One condition barred Fitzpatrick from having knowing contact with BreachForums users unless supervised by counsel. (JA15)

Soon after his arrest, Fitzpatrick appeared in the Eastern District of Virginia. Magistrate Judge William E. Fitzpatrick presided over the initial appearance in Virginia and continued Fitzpatrick on his prior release conditions, adding an additional provision barring Fitzpatrick from accessing virtual private network (VPN) software.  (JA18)

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

In July 2023, Fitzpatrick pleaded guilty pursuant to a plea agreement to an information charging conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2) (Count 1); access device fraud, in violation of 18 U.S.C. § 1029(a)(6) (Count 2); and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2) (Count 3). (JA19–JA26; JA27–JA101) In pleading guilty to Count 1, Fitzpatrick also pleaded guilty to 18 U.S.C. § 3559(g)(1), which doubled the applicable statutory maximum because Fitzpatrick knowingly falsely registered domain names, including "breached.vc," "breached.to," "breachedforums.com," "breachforums.net," and "breachforums.org," and knowingly used these domain names to commit the offense. (JA20; JA39; JA102) The Honorable T.S. Ellis III presided over Fitzpatrick's plea proceedings.

As part of the plea agreement, the parties stipulated to the applicability of certain Guideline provisions (JA104–JA105), as discussed in more detail below. The plea agreement also provided that if Fitzpatrick qualified for a two-level offense

13

reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), then the government would move for an additional one-level reduction under U.S.S.G. § 3E1.1(b). (JA106) As part of the plea agreement, Fitzpatrick agreed to cooperate with the government. (JA57–JA61; JA112)

In accepting Fitzpatrick's plea, Judge Ellis also signed the parties' consent order of forfeiture, allowing the government to forfeit (1) $698,714, the proceeds of Fitzpatrick's operation of BreachForums; (2) various forms of cryptocurrency held in crypto wallets; (3) over 100 domain names used or intended to be used to commit his crimes; and (4) over two dozen digital devices. (JA133–JA139)

Finally, Judge Ellis continued Fitzpatrick on his prior terms of release and added additional restrictions barring him from accessing a computer or the internet without computer monitoring software installed by pretrial services or using any tools to circumvent the monitoring software or obscure his identity, such as a VPN. (JA93–JA94; JA99; JA140–JA144)

██████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

**G.    Fitzpatrick violates the conditions of his pretrial release
by using an unauthorized phone and downloading a VPN
service.**

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[3] ████████████████████████████████████████████

█████████████████████████████



███████████████████████████████████████████████████

█████████████████████████████████████    ███████████████

████████████████████

In December 2023, the Probation Office filed a petition alleging that Fitzpatrick violated the conditions of pretrial release barring him from accessing a computer or the internet without monitoring software that had been installed by the pretrial services office and using tools for obfuscating his identity, such as a VPN. (JA145–JA146) Judge Ellis quickly issued a warrant for Fitzpatrick's arrest. (JA147)

On January 2, 2024, Fitzpatrick appeared before Magistrate Judge Fitzpatrick, who set a revocation hearing for January 5, 2023, and detained Fitzpatrick until that hearing. On January 5, the defendant appeared before Judge Fitzpatrick, who ordered that the pretrial release violations be addressed by Judge Ellis at the upcoming sentencing hearing on January 19, 2024. (JA149–JA150) With defense counsel's consent, Fitzpatrick remained detained until the January 19 sentencing. (JA149–JA150) Fitzpatrick spent about 17 days in custody awaiting the disposition of his pretrial release violations.

███████████████████████████████████████

███████████████████████████████████████████████████

---

<sup>6</sup> ██ ████ ████ ██ █ ████ ██████ ████ ███ ████ ██ ████ ██ ████
███████████████████████████████████████████████████
██████████████████████████████████████████



**H.      The parties submit sentencing position papers.**

Prior to sentencing, the Probation Office prepared a Presentence Investigation

Report (PSR). The PSR adopted the parties' joint Guideline calculations as follows:

**Counts 1 and 2: Conspiracy to Commit Access Device Fraud and
Solicitation for the Purpose of Offering Access Devices**

| Guideline | Offense Level |
|---|---|
| Base offense level (U.S.S.G. § 2B1.1(a)(2)) | 6 |
| Loss amount was more than $550,000 but less than $1,500,000 (U.S.S.G. § 2B1.1(b)(1)(H)) | +14 |
| Offense involved 10 or more victims (U.S.S.G. § 2B1.1(b)(2)(A)(i)) | +2 |
| Offense involved receiving stolen property, and the defendant was in the business of receiving and selling stolen property (U.S.S.G. § 2B1.1(b)(4)) | +2 |
| Offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means (U.S.S.G. §2B1.1(b)(10)(C)) | +2 |
| Offense involved production or trafficking of any unauthorized access device or counterfeit access device (U.S.S.G. § 2B1.1(b)(11)(B)(i)) | +2 |
| Offense involved the unauthorized public dissemination of personal information (U.S.S.G. § 2B1.1(b)(18)(B)) | +2 |
| Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive (U.S.S.G. § 3B1.1(a)) | +4 |
| Statutory enhancement under 18 U.S.C. § 3559(g)(1) applies (U.S.S.G. § 3C1.4) | +2 |
| **ADJUSTED OFFENSE LEVEL** | **36** |

**Count 3: Possession of Child Pornography**

| Guideline | Offense Level |
|---|---|
| Base offense level for a violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (U.S.S.G. § 2G2.2(a)(1)) | 18 |
| The material involved a prepubescent minor or a minor who had not attained the age of 12 years. (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| The offense involved the use of a computer or interactive service for the possession, transmission, receipt, or | +2 |

| | |
|---|---|
| distribution of the material, or for accessing with intent to view the material. (U.S.S.G. § 2G2.2(b)(6)) | |
| The offense involved at least 600 images. (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |
| **ADJUSTED OFFENSE LEVEL** | **27** |

(JA246–JA247) The PSR declined to apply a two-level reduction under § 3E1.1(a)

for acceptance of responsibility due to Fitzpatrick's failure to comply with his

conditions of release. (JA246; JA259) The PSR calculated Fitzpatrick's total

Guideline range as 188-235 months in prison, based on an offense level of 36 and a

criminal history category of I. (JA252)

The PSR also included impact statements from various victim-entities whose

data had been breached and shared on BreachForums. One victim—██████████

█████████████████—described the business and reputational losses caused by the

breach, as well as the $750,000 in damages it subsequently paid. (JA260) Another

victim—a U.S.-based background check service—stated that it incurred a loss of

over $197,000 in legal, forensic-analysis, and public relations fees due to a breach

that resulted in BreachForums user "Sin" posting around 20 million user records on

the site. (JA267) In response to this breach, this same victim also received a request

for information from the U.S. Federal Trade Commission and was sued in the

Western District of Michigan. (JA267; JA284) Another victim—the Tacoma-Pierce

County Health Department—described spending 399 hours responding to a breach

of its system that resulted in the PII of 1.5 million users being shared on BreachForums' Content Distribution Network. (JA157; JA285; JA269)

Nine days before the joint sentencing and pretrial release violation hearing scheduled before Judge Ellis, Fitzpatrick's case was reassigned to Judge Leonie M. Brinkema. (Dkt. Entry for Jan. 10, 2024.) Shortly after, the parties submitted their sentencing submissions.

The government urged the district court to impose a bottom-of-the-Guideline, 188-month sentence, arguing that this sentence was sufficient but not greater than necessary to reflect the seriousness of the crime, the harm to the victims, the risk of recidivism, and to deter Fitzpatrick and others who sought to profit from cybercrime. The government's sentencing submission included additional information concerning another victim—a California healthcare company—whose data was breached and posted on BreachForums. (JA284) As a result of this breach, an individual whose PII landed on BreachForums filed a class action lawsuit in the Northern District of California against the healthcare company. (JA309; JA311–JA324) The company described incurring "substantial costs in the form of data breach response and remediation, security controls and improvements, business interruption, and the continued costs of litigation." (JA284) The government's sentencing submission also provided the district court with ███████████

███████████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████  Additionally, the government highlighted Fitzpatrick's

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████

Through his sentencing submission, Fitzpatrick objected to the PSR's Guideline calculations—which did not include credit for acceptance of responsibility—and requested a sentence of time served followed by five years of probation. (JA408–JA436) In large part, Fitzpatrick relied on ████████████ ████████████  ████████████  completed in August 2023 and December 2023, respectively, but disclosed for the first time as attachments to his sentencing submission filed three days before the January 19, 2024, sentencing.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

## I.   The district court sentences Fitzpatrick to a time served sentence of 17 days.

At sentencing, the district court first overruled Fitzpatrick's Guideline challenge:

> given the conduct of the defendant while he was on supervision -- as you know, he was out on bond and a warrant had to be issued by Judge Ellis, who is unable to handle this case so I've taken it over for him, because the defendant had violated several significant conditions of bond. That's why he is now in custody. That kind of conduct while someone is on -- is awaiting sentencing is a strong indicator that acceptance of responsibility is no longer appropriate.

(JA153) The court then correctly calculated the Guideline range as 188 to 235 months. (JA154)

In its sentencing argument, the government elaborated at length on Fitzpatrick's knowing and deliberate creation and operation of BreachForums as a hub to facilitate the activity of cybercriminals. The government highlighted how Fitzpatrick created BreachForums as a substitute for Raidforums, which law enforcement had previously seized, and that rather than being deterred by the arrest of Raidforums' founder, Fitzpatrick became more determined and defiant. (JA159) The government also addressed Fitzpatrick's numerous pretrial violations, which,

the government argued, led to the inescapable conclusion that Fitzpatrick could not be deterred and was a danger to the community. (JA160) Finally, the government discussed the substantial impact of Fitzpatrick's crimes on various victims, including the monetary, reputational, litigation, and labor losses suffered by those entities whose breached data was traded on BreachForums. (JA156–JA158)

For his part, Fitzpatrick's counsel argued that Fitzpatrick was not the man the government painted him out to be. After noting that Fitzpatrick's conduct was serious and that he had owned up to it, the district court interjected as follows:

> But here's the aggravating factor in this case. I would absolutely agree with you, had the conduct while on supervision, pretrial supervision, not occurred. Right?
>
> You know, at this point the [c]ourt is faced with clearly a young man with some significant mental health issues, very significant. And that is going to factor into the ultimate sentence. Nevertheless, the potential risk to the community is something the [c]ourt must consider, and that affects how one sentences a defendant.
>
> Now, here, he was allowed to remain out in the community while these charges were being adjudicated. And as you know from the violation proceedings, or papers, there were serious violations of those conditions, which is, unfortunately, for your client, a strong indication that he is not amenable to control within the community. You need to address that.

(JA163)

Defense counsel responded that while Fitzpatrick's violations were serious, they were not criminal, and urged the court to look at the full context. Counsel then alluded to Fitzpatrick's mental health challenges, later referencing Fitzpatrick's

undiagnosed and untreated mental health issues. (JA166) As defense counsel began to address the Guideline range, the district court interjected, "Counsel, I can stop you on this point. The [c]ourt is going to issue a variant sentence, all right? So the guidelines become relatively...." (JA169–JA170)

After defense counsel completed his sentencing argument, the district court allowed Fitzpatrick to allocute. The following colloquy then ensued between the district court and Fitzpatrick:

**District Court**: How are you doing in jail?

**Fitzpatrick**: The best that you can, Your Honor.

**District Court**: Well, tell me a little bit about it.

**Fitzpatrick**: At the start, I was in cell 24 hours a day, and then 22 hours a day. And now I'm in my cell for around half the day, Your Honor.

**District Court**: Do you have a cell mate?

**Fitzpatrick**: No, Your Honor. I'm in the mental health unit in the Alexandria Detention Center, Your Honor.

**District Court**: Are you taking any classes or going to any programs?

**Fitzpatrick**: They don't have classes or programs, really, that I know of, Your Honor. So I've just been really just sitting around, Your Honor.

(JA172.)

As the court turned to impose its sentence, the court remarked on Fitzpatrick's mental-health issues:

26

I mean, he's already served about two weeks in the local jail here, apparently without any problems. My concern is taking a 21-year-old young man who is probably closer to a 16 or 17-year-old in terms of actual maturity, I think the mental health records clearly would show that, and someone with the very clear documented mental health history that we have -- this is not somebody who, you know, post criminal conduct all of a sudden develops mental health issues. I mean, this young man has had them for years.

(JA173) The court further commented that "the defendant has been in custody for two weeks, and he has survived that, but only because he's in a local jail and he's in a mental health unit. He's not in general population. This young man in general population I think would just be a disaster." (JA174)

Ultimately, the court sentenced Fitzpatrick to "time served, followed by a period of 20 years of supervised release." (JA174) After describing how the sentence would be structured, the district court explained that its sentence provided "the best opportunity to try to protect the community as well as to not see this young man just ravaged in a prison setting where he would never get the mental health treatment that he needs." (JA174) The court added, "[h]e would clearly be a potential victim." (JA174–JA175) The district court concluded by explaining "that is why I'm imposing such an extensively variant sentence." (JA175) The district court also imposed a special condition of supervised release requiring Fitzpatrick to "serve his first two (2) years of supervised release on HOME ARREST with GPS location monitoring[.]" (JA186)

This appeal followed. (JA191)

27

## Summary of Argument

The district court's 17-day time-served sentence is substantively unreasonable in light of the 18 U.S.C. § 3553(a) factors and must be vacated.

The district court erred in giving excessive weight to Fitzpatrick's mental health condition to the exclusion of every other relevant sentencing factor. Although Fitzpatrick's ███████ was one relevant factor, it did not justify the court's decision to vary over 99% from the Guideline range. Indeed, the district court's sentence undermines virtually every relevant sentencing factor.

The district court's sentence fails to account for the seriousness of Fitzpatrick's offenses or provide just punishment. In addition to possessing child pornography—including images of prepubescent girls—Fitzpatrick created and operated the largest data breach forum of its kind. He earned hundreds of thousands of dollars brokering deals between buyers and sellers of hacked and stolen information and facilitated the victimization of countless entities whose sensitive data was listed on BreachForums.

The district court's sentence also fails to afford any specific deterrence or protect the public from further crimes. Undeterred by the arrest of the founder of Raidforums, Fitzpatrick speedily created BreachForums to create a space for cybercriminals to continue selling stolen data. After his arrest, Fitzpatrick violated his conditions of release ████████████████████████████. ███████████████

██████████████████████████████████████████

██████████████████████████████████████. Fitzpatrick's case cries out for specific deterrence. The district court's sentence provides none.

Nor does the court's sentence protect the public. Fitzpatrick committed his crimes and violated his pretrial release from his New York home. The record makes clear that neither Fitzpatrick's parents nor the Probation Office can adequately control or monitor Fitzpatrick. Sending Fitzpatrick straight back home without any meaningful sentence undermines public safety.

The district court's sentence also undermines respect for the law and fails to afford any general deterrence. Fitzpatrick broke the law on a major scale. His data breach victims hailed from all sectors of U.S. life. After his arrest, Fitzpatrick repeatedly demonstrated a disregard for court orders. No would-be cybercriminal or child pornographer will be deterred by the district court's sentence. In the same way, the district court's sentence seriously undermines respect for the law.

Additionally, the district court's sentence creates significant disparities. The Sentencing Commission considered avoidance of unwarranted disparities in issuing the Guidelines. Here, Fitzpatrick's Guideline range was 188 to 235 months' imprisonment. The district court's 17-day sentence is not even close to the low end of that range. The court's sentence is also substantially unlike the sentences imposed on other defendants convicted of similar offenses.

29

The district court further erred in relying on Fitzpatrick's ███████ to reach speculative and unsupported conclusions. Nothing in the record supports the court's conclusion that Fitzpatrick would be a "disaster" or "ravaged" in prison. The district court's conclusion that BOP could not provide Fitzpatrick with mental health treatment is also unsupported by the record and reality.

To reestablish respect for the law, promote just punishment and deterrence, and protect public safety, this Court must vacate the sentence.

## Argument

### Fitzpatrick's sentence is substantively unreasonable.

This Court reviews the reasonableness of a sentence for abuse of discretion. *See United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020). In considering the substantive reasonableness of a sentence, this Court will "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). As relevant here, two key principles must inform this Court's review of the substantive reasonableness of the district court's 17-day sentence.

First, when a district court imposes a "substantial" variance, this Court "must more carefully scrutinize the reasoning offered by the district court in support of the sentence." *United States v. Provance*, 944 F.3d 213, 219–20 (4th Cir. 2019) (quoting

*United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006), *overruled in part on other grounds by Rita v. United States*, 551 U.S. 338 (2007)). "And '[t]he farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be.'" *Id.* at 220 (quoting *Moreland*, 437 F.3d at 434). As the Supreme Court and this Court have explained, "when determining whether the district court's proffered justification for imposing a non-guidelines sentence 'is sufficiently compelling to support the degree of the variance,' common sense dictates that 'a major departure should be supported by a more significant justification than a minor one.'" *United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008) (quoting *Gall*, 552 U.S. at 50).

Second, district courts are "obligated not to give excessive weight to any relevant factor and to impose a sentence which effects a fair and just result in light of the relevant facts and law." *United States v. Howard*, 773 F.3d 519, 531 (4th Cir. 2014) (cleaned up). "[W]hen a district court focuses so heavily on a single sentencing purpose only tangentially connected to a defendant's grave criminal misconduct, it risks abusing its discretion." *United States v. Zuk*, 874 F.3d 398, 410 (4th Cir. 2017); *see also United States v. George*, No. 19-4841, 2021 WL 5505404, at *6 (4th Cir. 2021) (reversing probationary sentence as substantively unreasonable where district court varied from Guideline range of 70 to 87 months and "gave excessive weight" to post-conviction consequences defendant would suffer); *United*

*States v. Engle*, 592 F.3d 495, 504 (4th Cir. 2010) (reversing probationary sentence as substantively unreasonable where district court varied from Guideline range of 24 to 30 months due to "near-exclusive focus" on defendant's ability to pay restitution); *United States v. Hampton*, 441 F.3d 284, 288 (4th Cir. 2006) (reversing probationary sentence where district court varied from Guideline range of 57 to 71 months by giving "excessive weight" to one factor, concern over the fate of defendant's children).

Here, the district court erred in relying excessively on Fitzpatrick's mental health condition to the exclusion of all other sentencing factors in reaching its chosen sentence. This Court's precedent compels reversal for this reason alone. *See Zuk*, 874 F.3d at 410–411 (holding that the district court's focus on defendant's autism spectrum disorder to the exclusion of all other § 3553(a) factors rendered its sentence substantively unreasonable). The district court compounded that error by relying on Fitzpatrick's mental health condition to reach unsupported conclusions, which did not justify the massive variance here. Because the time-served sentence of 17 days' imprisonment is substantively unreasonable in light of the sentencing factors, the Court should vacate and remand.

### A. The district court erred in focusing excessively on Fitzpatrick's mental health condition to the exclusion of other sentencing factors.

A straightforward application of this Court's precedent requires vacatur of Fitzpatrick's sentence. In *Zuk*, this Court held that the district court's excessive focus on the defendant's autism spectrum disorder rendered its sentence substantively unreasonable. *Id*. at 410–411. The defendant in *Zuk* had a Guideline range of 324 to 405 months, capped at the 240-month statutory maximum. But in imposing a 26-month time-served sentence, the district court "focused almost entirely" on the defendant's autism spectrum disorder. *Id*. at 410. The government appealed and this Court reversed, holding that the district court's "extensive" 90% variance from the Guideline range was "not justified by the consideration that the district court gave to the sentencing factors set forth in § 3553(a)." *Id*. Specifically, the sentence issued by the district court in *Zuk* failed to "adequately respond[] to the needs for punishment, deterrence, and respect for the law." *Id*. at 411.

Likewise, this Court reversed a probationary sentence in *George*, because the district court "gave excessive weight" to one factor and "fail[ed] to significantly weigh the seriousness of the crime" and impose a sentence that comported with "the goals of the § 3553(a) factors," namely "to promote respect for the law,' provide just punishment,' 'afford adequate deterrence', and 'protect the public[.]'" 2021 WL 5505404, at *6 (quoting § 3553(a)).

33

For the same reasons, the district court's 17-day sentence in this case is substantively unreasonable. As in *Zuk*, the district court erred in varying over 99% from the 188- to 235-month Guideline range by focusing exclusively on Fitzpatrick's mental health condition. (*See* JA172–JA175) And it did so to the exclusion of virtually every other sentencing factor, including the need to promote respect for the law and to ensure adequate deterrence, to protect the public from further crimes, and to avoid unwarranted sentencing disparities. *Id*. at 410–411. Moreover, just as in *Zuk*, the district court's error is compounded by the fact that Fitzpatrick's condition was "only tangentially connected to [his] grave criminal misconduct[.]" *Id*. 410; *see also United States v. Demma*, 948 F.3d 722, 729 (6th Cir. 2020) (reversing one-day sentence for possession of child pornography where district court gave "unreasonable weight" to defendant's PTSD at the expense of other relevant factors).

Notwithstanding Fitzpatrick's ████, he managed to establish a full-fledged online universe devoted to facilitating cybercrime across the globe. Fitzpatrick carefully choreographed BreachForums to allow its hundreds of thousands of users to maximize their illegal activity and trade in confidence. Fitzpatrick designed and administered the site's software and computer infrastructure. He kept the site running through the purchase of multiple domain names, employed and managed a paid staff to help administer the site, established a credit system, created and

implemented processes for buying and selling hacked or stolen information, enforced the site's rules, and encouraged users to spread the word when sharing databases. (*See* JA120–JA129)

Notwithstanding the communication and social challenges posed by Fitzpatrick's autism, he managed to broker hundreds of thousands of dollars' worth of deals through his middleman service. There is also no question that Fitzpatrick knew what he was doing was wrong. He even helped one BreachForums member who feared law enforcement scrutiny delete his or her IP address from the site. (JA129) He promised another user that he would falsify registration information should law enforcement ever request it, jokingly stating that he "doubt[ed] law enforcement would even bother making legal requests to a hacking forum lmao[.]" (JA129) And in brokering a deal between the OCE and "expo2020" for the PII of 15 million U.S. persons, Fitzpatrick only released the payment after the OCE confirmed he would use the PII to commit financial crimes. (JA127)

Fundamentally, Fitzpatrick's mental health conditions have little bearing on his criminal conduct, *see Zuk*, 874 F.3d at 410, and are simply not sufficiently compelling to warrant the drastic variance imposed here. *Moreland*, 437 F.3d at 434.

### 1. The district court's sentence fails to account for the seriousness of Fitzpatrick's offenses or provide just punishment.

The district court's sentence fails to adequately capture the seriousness of Fitzpatrick's offenses or provide just punishment. *See* § 3553(a)(2)(A). By his own admission, Fitzpatrick created and administered the largest English-language data breach forum of its kind. (JA123) Fitzpatrick created BreachForums to replace RaidForums, which was taken offline by the FBI and its founder arrested. (JA120–JA121) Fitzpatrick deliberately operated BreachForums to be an attractive marketplace for cybercriminals to purchase, sell, or trade stolen or hacked information. (JA121) BreachForums boasted over 300,000 members and allowed its users to pursue a variety of unlawful and harmful activity. (JA123)

Not only did Fitzpatrick create and administer BreachForums, but he actively participated in the transactions occurring on the site. Fitzpatrick acted as a trusted intermediary between BreachForums members buying and selling hacked or stolen information. (JA123–JA129) Fitzpatrick's "Content Distribution Network" claimed to host 888 data sets, consisting of 14 billion individual records. (JA123)

Fitzpatrick approved the uploading of hacked or stolen data sets to BreachForums, which in turn allowed them to be offered for sale on the site. Like any good middleman, Fitzpatrick's efforts were key to facilitating the numerous unlawful transactions that occurred on BreachForums. Fitzpatrick was the

36

indispensable ingredient needed to make BreachForums function. Not only because he created the website in the first place. And not just because he then administered the website and kept it functioning. But specifically, because his broker service allowed buyers and sellers of hacked or stolen information to transact with assurance, thereby adding to the success of BreachForums and allowing Fitzpatrick and conspirators to earn nearly $700,000.

Fitzpatrick's victims hailed from all sectors of U.S. life. These "victims included U.S.-based healthcare companies, a major public healthcare exchange, public health organizations, the FBI's InfraGard partnership for protecting critical infrastructure, major U.S. based social media companies, U.S.-based merchants and service providers of varying size, and U.S.-based financial institutions." (JA283) Some of these victims described the financial and reputational harms suffered by the illegal disclosure of their sensitive information on BreachForums. One victim paid $750,000 in damages. (JA260) Another incurred a loss of over $197,000 in legal, forensic-analysis, and public relations fees. (JA267) Some victims spent hundreds of hours responding to the breach of their systems (JA285; JA269), while others found themselves named in lawsuits or subject to government inquiries. (JA267; JA284; JA309; JA311–JA324)

Data breaches—and the resultant identity theft—are the scourge of the modern era. *See United States v. Carver*, 916 F.3d 398, 404 (4th Cir. 2019).[7] And Fitzpatrick was the architect of a website that facilitated the sale and purchase of the fruits of such breaches. He enthusiastically participated in unlawful transactions and created the conditions for BreachForums to flourish. His actions enabled cybercriminals to profit from their handiwork and caused significant harm to numerous victims.

In addition to his cybercrime activity, Fitzpatrick also possessed 26 files depicting minors engaged in sexually explicit conduct. Fitzpatrick stipulated that his offense involved at least 600 images of child pornography. (JA246–JA247) Some of these minors had yet to reach puberty. (JA130) "It is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)). This Court has noted the "ample evidence of Congress's intent that offenses involving child pornography be treated

---

[7] Indeed, over the last decade, breach-related litigation has become a regular feature of this Court's docket. *See, e.g.*, *Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252 (4th Cir. 2024); *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc*., 892 F.3d 613 (4th Cir. 2018); *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017).

severely[.]" *United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010). This Court has therefore "instructed [district] courts to give respectful attention to Congress'[s] view that [child pornography crimes] are serious offenses deserving serious sanctions." *United States v. Strieper*, 666 F.3d 288, 296 (4th Cir. 2012); *see also Zuk*, 874 F.3d at 411 ("Further informing the seriousness of Zuk's conduct is Congress's judgment, which we must respect, that *any* child pornography crime is a serious offense[ ] deserving serious sanctions.") (internal quotation marks and citations omitted). "However," there is "no indication in the record that the district court followed [this Court's] instruction and considered this statement of congressional policy in choosing to sentence" Fitzpatrick. *Morace*, 594 F.3d at 350 (reversing 100% variant sentence of probation for possession of child pornography).

"A sentence is substantively unreasonable when it is not proportionate to the seriousness of the circumstances of the offense and offender." *United States v. Schrank*, 975 F.3d 534, 536 (6th Cir. 2020) (internal quotation marks omitted). Here, the district court's time served sentence of 17 days—all 17 of which were served due to repeated pretrial release violations—for a defendant so deeply entrenched in a variety of serious criminal conduct cannot be harmonized with the sentencing factors. *See United States v. Tucker*, 473 F.3d 556, 564 (4th Cir. 2007) (reversing sentence where "district court failed to maintain a strong connection between [the defendant's] real conduct and the sentence imposed."). "For such [] serious

39

offense[s], however, [Fitzpatrick] did not receive so much as a slap on the wrist—it was more like a soft pat." *United States v. Crisp*, 454 F.3d 1285, 1291 (11th Cir. 2006).

At bottom, Fitzpatrick's sentence fails to account for the seriousness of his offenses and the many victims he harmed. In fact, the district court at sentencing did not even acknowledge Fitzpatrick's many victims. *Cf. Strieper*, 666 F.3d at 296 (instructing district courts "to give respectful attention to Congress'[s] view that [child pornography crimes] are serious offenses deserving serious sanctions"); *Zuk*, 874 F.3d at 411 (same); *Morace*, 594 F.3d at 347 (same). Instead, the district court appeared to be "concerned only with how the sentence will affect" Fitzpatrick. *United States v. Christman*, 607 F.3d 1110, 1123 (6th Cir. 2010). But he is "not the victim[] of the crime and it is not for [his] benefit alone that the sentence must be imposed." *Id.*; *see also United States v. Goldberg*, 491 F.3d 668, 672–74 (7th Cir. 2007) (reversing child pornography sentence as substantively unreasonable based, in part, on district court's "erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims").[8]

---

[8] Except for a reference to child pornography and "data breach issues," one could read the district court's sentencing explanation and emerge unaware of the offenses to which Fitzpatrick pleaded guilty, to say nothing of the details, extent, and scope of his operation of BreachForums and the victims impacted by his offenses. *Cf.* 18 U.S.C. § 3553(a)(1) (district court shall consider "the nature and circumstances of the offense").

40

**2. The district court's sentence fails to afford any specific deterrence or protect the public from further crimes.**

The district court's sentence also fails to afford adequate deterrence or protect the public from further crimes. *See* § 3553(a)(2)(A)-(C).

Fitzpatrick created BreachForums after the founder of Raidforums was arrested and his site taken offline. Fitzpatrick launched BreachForums almost immediately, and even used the same moniker, "Pompompurin," on both sites. He leveraged his good name on Raidforums to achieve success on BreachForums. Evidentially, the arrest of Raidforums' founder failed to leave an impression on Fitzpatrick, who wasted no time in filling the void left by Raidforums' demise. This sequence was the first indication that Fitzpatrick was a prime candidate for specific deterrence.

Any lingering doubts were put to rest by Fitzpatrick's conduct on pretrial release. Fitzpatrick appeared in the Eastern District of Virginia on March 28, 2023. At his initial appearance, Magistrate Judge Fitzpatrick imposed conditions of pretrial release, including one that barred Fitzpatrick from having knowing contact with BreachForums users unless supervised by counsel. (JA15) ████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████

Specifically, Fitzpatrick violated the conditions of pretrial release barring him
from accessing a computer or the internet without monitoring software that had been
installed by the pretrial services office and using tools for obfuscating his identity,
such as a VPN. (JA145–JA146) ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

Fitzpatrick's creation of BreachForums immediately after the arrest of the founder of Raidforums, his immediate violation of the conditions of his pretrial release, ███████████████████████████████████ paint a picture of an unrepentant and defiant individual who is in desperate need of deterrence. At sentencing, the district court even acknowledged Fitzpatrick's conduct while on pretrial supervision, noting that his violations were "serious" and "a strong indication that he [wa]s not amenable to control within the community." (JA163) But the district court never returned to this point, let alone attempted to harmonize its 17-day time-served sentence with the need for deterrence and public safety. This was error. *See United States v. Wooden*, 693 F.3d 440, 454 (4th Cir. 2012) ("[D]istrict court's failure to acknowledge its initial views or explain" itself constitutes clear error); *see also United States v. Ceasar*, 10 F.4th 66, 83 (2d Cir. 2021) (reversing below-Guideline sentence based on defendant's history of abuse and need for mental health treatment as substantively unreasonable where court failed to address the fact that the defendant "had already exhibited recidivist behavior while on release awaiting sentencing").[9]

---

[9] To the extent the district court silently relied on ████████████████████████████ ███████████████████████████████, that too would be error. *See Wooden*, 693 F.3d at 454. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

At best, the district court later stated that its sentence provides "the best opportunity to try to protect the community[.]" (JA174) But the district court never squared that statement with Fitzpatrick's record of pretrial release violations. *See Hampton*, 441 F.3d at 288–89 ("[A]lthough the district court briefly mentioned two § 3553(a) factors-deterrence and protection of the public-in setting forth the variance sentence, the court never explained how the sentence imposed—probation—served these interests."); *see also United States v. Fowler*, 948 F.3d 663, 670 (4th Cir. 2020) ("[T]he risk of recidivism is inversely related to an inmate's age at release. … If a prisoner is released at an age where recidivism is more likely, bad conduct may not be deterred and the public may not be protected.") (internal quotation marks and citation omitted). And the court's conclusion is impossible to square with the objective facts of this case, namely Fitzpatrick's indefatigable drive to create an online space for cybercriminals and his repeated and immediate defiance of court orders.

Nor is there any reason to believe that the need to protect the community will be sufficiently addressed by sending Fitzpatrick back home after 17 days in a local detention facility. Recall, Fitzpatrick committed his crimes from his family's New York home. He also repeatedly violated the terms of his supervision from that same

home. . Given

Fitzpatrick's record of flouting his parents' authority, the notion that sending him

straight back to his family's home provides "the best opportunity to try to protect the

community" is illogical.[10] *See United States v. Hinkson*, 585 F.3d 1247, 1261–62

(9th Cir. 2009) (en banc) ("A court's factual determination is clearly erroneous if it

is illogical, implausible, or without support in the record.") (quoting *Anderson v.*

---

[10] Returning Fitzpatrick to his home does not even promote the district court's chief concern—Fitzpatrick's wellbeing. ████████████████████ ██████████████████████ The record is clear that releasing Fitzpatrick to his home not only does not protect the public, but also may not protect Fitzpatrick. *See Savic v. United States*, 918 F.2d 696, 700 (7th Cir. 1990) ("A finding is clearly erroneous when … the trial judge's interpretation of the facts is implausible, illogical, [or] internally inconsistent").

*City of Bessemer City*, 470 U.S. 564, 577 (1985)); *see also United States v. Green*, 436 F.3d 449, 460 (4th Cir. 2006) (reversing sentence and finding unpersuasive district court's reliance on defendant's supportive family where the defendant committed his crimes with "presumably the same family support").

The district court's two-years-on-home-arrest condition suffers from the same flaws. Fitzpatrick committed his crimes from his home. Confining him to that very same home accomplishes nothing. This is especially so given Fitzpatrick's demonstrated ability to elude his parents' and Probation's scrutiny. Relatedly, the district court's belief (JA174) that a lengthy period of supervised release permitted it to "control" and "monitor" Fitzpatrick fails to withstand scrutiny. While on pretrial release, ███████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████ Fitzpatrick has thus already demonstrated that he cannot be "control[led] or "monitor[ed]" by Probation on supervised release.

### 3. The district court's sentence undermines respect for the law and fails to afford any general deterrence.

The district court's sentence also fails to account for general deterrence and the need to promote respect for the law. *See* § 3553(a)(2)(A)-(B); *George*, 2021 WL

5505404, at *6; *see also United States v. Medearis*, 451 F.3d 918, 920–21 (8th Cir. 2006) ("General deterrence ... is one of the key purposes of sentencing, and the district court abused its discretion when it failed to give that matter its proper weight."). "General deterrence is crucial in the child pornography context[.]" *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010). "The greater the customer demand for child pornography, the more that will be produced." *Goldberg*, 491 F.3d at 672. And because "[s]entences influence behavior … [t]he logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *Id.*; *see also Strieper*, 666 F.3d at 296; *Zuk*, 874 F.3d at 411; *Morace*, 594 F.3d at 347. Notwithstanding the importance of general deterrence and protecting victims, the district court failed to even mention these factors. *See United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("[D]eterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing, but in fact received not a word from the District Court."). And it is unclear how the district court's 17-day time-served sentence "would meaningfully deter [Fitzpatrick] or anyone else." *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012) (reversing as substantively unreasonable one-day sentence for possession of child pornography).

47

The same holds true regarding the district court's failure to account for the general deterrence of cybercriminals. Data breaches cost the U.S. economy billions of dollars annually and take a particular toll on ordinary individuals who may have had their identities stolen for fraudulent purposes. (JA330–JA407) Data breaches cost the average organization approximately $4.5 million. (JA334) Because "economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidate[s] for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotations and citation omitted). The history of this case supports this point. Fitzpatrick's crimes were not isolated, one-time incidents or crimes committed rashly. Fitzpatrick deliberately created BreachForums after the seizure of Raidforums. He purchased over 100 domain names in the process and reinvested his hefty earnings into the website. Fitzpatrick employed a staff to assist managing BreachForums and successfully operated the site for about one year, until his arrest. But the concerns over general deterrence are amplified here given Fitzpatrick's status as a well-known operator in the cyber underworld and the high-profile nature of his case.

Fitzpatrick was able to successfully create and administer BreachForums due to the reputation he developed for selling hacked datasets on Raidforums. (JA120) Eventually, BreachForums gained over 300,000 users. Fitzpatrick was obviously

well-known within the cybercriminal community and was trusted enough to operate as a successful middleman between criminals buying and selling hacked or stolen information. Even beyond his role as a reliable middleman, BreachForums members evidently felt comfortable enough to seek his assistance evading law enforcement. (JA129)

Fitzpatrick was not an unknown criminal plying his trade in secrecy. He used the same well-known moniker, "Pompompurin," on RaidForums, BreachForums, and in his ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ ██ ████████

---

[11] General deterrence is especially important in the context of cybercrimes, the perpetrators of which tend to spend an excessive amount of time operating and chatting online. ████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Fitzpatrick's prosecution also received substantial media attention, including by mainstream media outlets, such as CNN.com and Bloomberg.com, as well as in cyber news groups, such as Cybernews.com, Cyberscoop.com, Thehackernews.com, and Securityweek.com, among others. The Department of Justice issued lengthy press releases announcing the "Arrest of the Founder of One of the World's Largest Hacker Forums and Disruption of Forum's Operation."[12] The U.S. Attorney's Office for the Eastern District of Virginia also created a designated online page for victims who believed their personal information had been trafficked on BreachForums.[13]

Given the severity and scope of Fitzpatrick's offenses, his reputation within the cybercrime community, and the notoriety of his case, the district court's 17-day time-served sentence wholly undermines the goal of general deterrence. *See United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013) ("We are hard-pressed to see how a non-custodial sentence serves the goal of general deterrence."). Put simply, no cybercriminal familiar with Fitzpatrick's reputation and the scope of his

---

████████████████████████████████████████████ General deterrence is not a fictional construct, especially in the cybercrime realm. As the facts of this case demonstrate, the perpetrators of such crimes do, in fact, pay attention to the government's prosecutions.

[12]   *See*   https://www.justice.gov/opa/pr/justice-department-announces-arrest-founder-one-world-s-largest-hacker-forums-and-disruption.

[13]   *See*   https://www.justice.gov/usao-edva/united-states-v-conor-brian-fitzpatrick.

unlawful activity would be deterred by the district court's sentence. Like the sentence in *Zuk*, the district court's 17-day time-served sentence entirely "fails in a message of deterrence[.]" *Zuk*, 874 F.3d at 411.

For the same reasons, and much like the sentence in *Zuk*, the district court's sentence "undoubtedly does not promote respect for the law." *Id*. A 17-day sentence for a defendant who engaged in such serious, prolonged, and multifaceted criminal conduct, created so many victims, and repeatedly violated the court's conditions of release undermines respect for the law. Although Fitzpatrick, spent 17 days in a local detention center, he only did so because he violated his conditions of pretrial release. In reality, Fitzpatrick has not served a single day for his underlying offenses. But for his pretrial release violations, he likely would have served no sentence at all. "[T]he message of such a sentence is that would-be [cyber] criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009) (internal quotation marks omitted).

### 4. The district court's sentence creates significant sentencing disparities.

Finally, Fitzpatrick's 17-day time-served sentence is substantively unreasonable given the "magnitude" of the disparity created between the sentence and the Guideline range as well as other similarly situated defendants. *Zuk*, 874 F.3d at 412. The Sentencing Commission "clearly considered" "avoidance of

unwarranted disparities . . . when setting the Guidelines ranges." *Gall*, 552 U.S. at 54. Here, Fitzpatrick's Guideline range was 120 months' imprisonment for Counts 1 and 2 and a range of 188 to 235 months' imprisonment for Count 3. The district court's sentence is nowhere near this range. *See Bistline*, 665 F.3d at 767 ("We do not mean to imply that only a sentence in or around that range will avoid disparities with other similar defendants. But we do not see how the sentence imposed here avoids them."). Nor is the sentence anywhere near the statutory maximum for Counts 1 and 2—10 years each—or Count 3—20 years.

Likewise, the district court's 17-day sentence is an outlier given the sentences received by other defendants convicted of similar conduct. While no two cases are alike in terms of offense conduct and charging theory, defendants convicted of running online marketplaces that facilitated hacking or various forms of identity and access device theft have received significant sentences. *See United States v. Bondars*, *et al.*, 1:16-cr-228 (E.D. Va.) (168 months for defendant convicted of operating online service that helped hackers evade detection by antivirus software); *United States v. Burkov*, 1:15-cr-245 (E.D. Va.) (108 months for defendant who operated website that sold credit card numbers stolen through computer intrusions); *United States v. Pakhtusov*, 1:19-cr-310 (D.D.C.) (61 months for cooperating defendant who sold access devices on cybercrime forums); *United States v. Tverdokhlebov* 1:17-cr-9 (E.D. Va.) (110 months for defendant who sold and

trafficked sensitive personal and financial information on cybercrime forums); *United States v. Diaconu*, 8:20-cr-238 (M.D. Fla.) (42 months for defendant who operated website that sold access to compromised computer servers). And none of these defendants had the additional child pornography conviction present here. The sentence in this case reflects a significant, unwarranted disparity.

### B.      The district court's unsupported conclusions about Fitzpatrick's mental health condition failed to justify its significant downward variance.

The Court can vacate the sentence as substantively unreasonable based on *Zuk* alone. But the district court's error here goes one step beyond *Zuk*. Not only did the district court give excessive weight to Fitzpatrick's mental health conditions, but it relied on this factor to reach several speculative and unsupported conclusions. Specifically, the district court relied on Fitzpatrick's mental health condition to conclude that placing him in "general population" would be a "disaster" and that he would be "ravaged in a prison setting where he would never get the mental health treatment that he needs[.]" (JA174–JA175) Both conclusions are unsupported by the record and reality.

Moments before concluding that Fitzpatrick would be a "disaster" in general population, the district court learned directly from Fitzpatrick that he had been in a local detention facility for about two weeks without incident. (JA172–JA173) The district court even acknowledged that Fitzpatrick had already "served about two

weeks in the local jail here, apparently without any problems." (JA173) The court then speculated that although Fitzpatrick "has been in custody for two weeks, and he has survived," that fact was explainable "only because he's in a local jail and he's in a mental health unit. He's not in general population." (JA174) From this flawed premise the court concluded that "[t]his young man in general population I think would just be a disaster." (JA174)

Nothing in the record supports the proposition that Fitzpatrick would be a "disaster" or "ravaged" in prison. *See United States v. Maddox*, 48 F.3d 791, 798 (4th Cir. 1995) (reversing district court's decision to depart based on vulnerability in prison where the "reasons stated by the district court [were] inadequate to justify a downward departure."). Moreover, nothing in the record supports the district court's conclusion that Fitzpatrick "would never get the mental health treatment that he needs" if he were confined within the BOP. To be sure, one of Fitzpatrick's experts opined as a general matter—in a report disclosed three days before sentencing—that Fitzpatrick ███ ███ ██████████ ███ █ ████████ ████████████████ But no expert concluded that BOP could not provide the ██████

████████████████████████████████████████████████.[14] ████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████. Either

way, no expert stated that Fitzpatrick would be "ravaged" in prison. And no expert

stated that any possible victimization would necessarily be physical. At bottom,

there is no support in the record for the proposition that BOP cannot properly care

for and protect (if necessary) an inmate with ██████.[15]

The district court speculated that Fitzpatrick's success in local detention was

due to his being housed in a mental health unit. Again, this conclusion is speculative

and unsupported by the record. *See Wolfe v. Clarke*, 718 F.3d 277, 289 (4th Cir.

2013) (district court's speculation about past and future events was abuse of

discretion). But even assuming the district court were correct in maintaining that

Fitzpatrick could only survive in prison if he were placed in a mental health unit, the

court would still have no basis to conclude that BOP could not accommodate such

---

[14] In fact, BOP has precisely this sort of program. The First Step Act requires the BOP to create a "risk and needs assessment system." *See* First Step Act of 2018, Pub. L. No. 115-391, § 101, 132 Stat. 5194, 5195. One such program is the "Skills Program," which is designed for inmates with intellectual and social impairments, including ██████. *See* First Step Act Approved Programs Guide, available at www.bop.gov/inmates/fsa/docs/fsa_guide_eng_2023.pdf (September 2023).

[15] BOP facilities are not a free-for-all. BOP's facilities are highly regulated and staffed by professionals. Inmates who engage in violence are penalized and may be prosecuted. *See* Program Statement No. 5270.09, Inmate Discipline Program, available at https://www.bop.gov/policy/progstat/5270_009.pdf (July 8, 2011).

an inmate. *Hinkson*, 585 F.3d at 1261–62 ("A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record."). Nothing in the record demonstrates that Fitzpatrick "would never get the mental health treatment that he needs" in a BOP facility, and no evidence supports the proposition that a BOP facility would be less equipped than the local detention facility within which Fitzpatrick spent two successful weeks. Other than its speculation, the district court made no actual findings on BOP's ability to care for inmates with mental health disorders. The district court also had no information about the actual capabilities of the local detention facility within which Fitzpatrick was held, and common sense suggests that the BOP system would have far more resources to care for inmates with mental health disorders, including ███████, than a local facility. Widely available, opensource material confirms this point.[16] Indeed, BOP is now required by law to implement "specialized and comprehensive" training in procedures to "identify and appropriately respond to incidents that involve the unique needs of

---

[16] *See* Program Statement No. 5310.16, Treatment and Care of Inmates with Mental Illness, available at https://www.bop.gov/policy/progstat/5310_16.pdf (May 1, 2014); Program Statement No. 5310.17, Psychology Services Manual (August 25, 2016), available at https://www.bop.gov/policy/progstat/5310_017.pdf; and Program Statement No. 5324.08, Suicide Prevention Program (April 5, 2007), available at https://www.bop.gov/policy/progstat/5324_008.pdf.

individuals who have a mental illness or cognitive deficit." *See* First Step Act of 2018, Pub. L. No. 115-391, § 606, 132 Stat. 5194, 5244.[17]

Given that "the court imposed the most extreme downward variance possible," *Morace*, 594 F.3d at 351, this Court "must more carefully scrutinize" the district court's reasoning. *Provance*, 944 F.3d at 219–20. And where, as here, the district court diverged dramatically from the Guideline range, "the more compelling the reasons for the divergence must be.'" *Id*. at 220 (quoting *Moreland*, 437 F.3d at 434); *see also Abu Ali*, 528 F.3d at 261 (characterizing 40% deviation from the Guideline range as a "major" variance and requiring that it be "supported by a more significant justification than a minor one").

As explained above, not only is the district court's excessive reliance on Fitzpatrick's mental health condition unreasonable, but the conclusions the court drew from his ██████████ fail to withstand scrutiny. "At the substantive stage of reasonableness review, an appellate court may consider whether a factor relied on by a sentencing court can bear the weight assigned to it." *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc) (quoted in *Engle*, 592 F.3d at 504). Here,

---

[17] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████ The district court did not ask the government a single question concerning BOP's capabilities before reaching its sweeping conclusion that Fitzpatrick "would never get the mental health treatment that he needs[.]" (JA174)

Fitzpatrick's mental health cannot bear the weight assigned to it by the district court, especially considering the unfounded conclusions the court drew from his diagnosis. The district court's errors provide an additional basis for reversal. *See Abu Ali*, 528 F.3d at 262 (reversing "major" downward variant sentence where district court relied predominantly on flawed assessment of sentencing disparities under § 3553(a)(6)); *United States v. Curry*, 461 F.3d 452, 461 (4th Cir. 2006) (reversing downward variant sentence of 70% where defendant's payment of restitution did "not justify so large a variance from the advisory Guidelines range").

## Conclusion

For the reasons explained above, this Court should vacate the district court's 17-day sentence.

Respectfully submitted,

Jessica D. Aber
United States Attorney


_____/s/_____

Joseph Attias
Jacqueline R. Bechara
Lauren Pomerantz Halper
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

Aarash A. Haghighat
Senior Counsel
Computer Crime and
Intellectual Property Section
U.S. Department of Justice
1301 New York Avenue, NW
Washington, DC 20530

**Statement Regarding Oral Argument**

The United States respectfully requests that the Court hold oral argument in this case.

**Certificate of Compliance**

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,981 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.


_____ /s/ _____

Joseph Attias
Assistant United States Attorney