IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

>> <<

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

CONOR BRIAN FITZPATRICK,

*Defendant-Appellee.*

*On Appeal from the United States District Court
for the Eastern District of Virginia at Alexandria*

## REDACTED BRIEF FOR DEFENDANT-APPELLEE

Peter Neil Katz
LAW OFFICES OF PETER KATZ, LLC
116 Village Boulevard, 2nd Floor
Princeton, New Jersey 08540
609-734-4380

*and*

Andrew J. Frisch
THE LAW OFFICES OF
    ANDREW J. FRISCH, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
212-285-8000

*Attorneys for Defendant-Appellee*



# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................... ii

Preliminary Statement ................................................................................ 1

Introduction ................................................................................................ 1

Issue Presented .......................................................................................... 7

Statement of the Case ................................................................................ 8

    A. The Connection Between Fitzpatrick's Mental
       Illness and His Crime ....................................................................... 8

    B. The Parties' Competing Recommendations for
       Sentencing ........................................................................................ 14

    C. The Sentencing ................................................................................ 18

Argument ................................................................................................... 20

Conclusion ................................................................................................. 29

Certificate of Compliance ......................................................................... 30

Certificate of Service ................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Ardit Ferizi,*
    16-CR-42 (EDVA) .......................................................................18

*United States v. Engle,*
    592 F.3d 495 (4th Cir. 2010)..................................................6, 26

*United States v. Gary McKinnon,*
    02-CR-576 (EDVA) ...................................................................17

*United States v. George,*
    2021 WL 5505404 (4th Cir. Nov. 24, 2021)...............................27

*United States v. Hargrove,*
    625 F.3d 170 (4th Cir. 2010)..............................................3, 21, 23

*United States v. Howard,*
    773 F.3d 519 (4th Cir. 2014).....................................................26

*United States v. Moreland,*
    437 F.3d 424 (4th Cir. 2006)..................................................6, 26

*United States v. Moussaoui,*
    591 F.3d 263 (4th Cir. 2010)......................................................2

*United States v. Provance,*
    944 F.3d 213 (4th Cir. 2019)..............................................7, 20, 28

*United States v. Whitley,*
    105 F.4th 62 (4th Cir. 2024) ......................................................2

*United States v. Zuk,*
    874 F.3d 398 (4th Cir. 2017)............................................*passim*

**Statutes**

Title 18, United States Code § 1029(b)(2)...............................................1

ii

Title 18, United States Code § 3559(g)(1)...................................................................1

Title 18, United State Code § 2252(a)(4)(b)...............................................................1

Title 18, United State Code § 2252(b)(2) ..................................................................1

U.S.S.G. § 5H1.1.................................................................................................*passim*

U.S.S.G. § 5K1.1.............................................................................................5, 9

**Other Authorities**

Ap News Website, Article – "Senators clash with US prisons chief
    over transparency, seek fixes for problem-plagued agency,"
    *https://apnews.com/article/federal-prisons-colette-peters-senate-*
    *judiciary-committee-ca053cfe5170a755771392498153a420* ........................24

CBS News Website,
    *www.cbsnews.com*..............................................................................................4

Federal Prison Oversight Act, H.R. 3019 ..................................................................4

Riverbender Website, Aricle – "Durbin, Warren, Ossoff Lead
    Colleagues In Raising Concerns With Wellpath Over Inadequate
    Health Care Services In Prisons And Jails Nationwide,"
    *https://www.riverbender.com/articles/details/durbin-warren-*
    *ossoff-lead-colleagues-in-raising-concerns-with-wellpath-over-*
    *inadequate-health-care-services-in-prisons-and-jails-nationwide-*
    *69832.cfm* ........................................................................................................24

The Marshall Project Website, Article – "How Federal Prisons Are
    Getting Worse,"
    *https://www.themarshallproject.org/2024/03/02/senate-federal-*
    *prison-senate-deaths* ........................................................................................4

The Washington Post Website, Article – "Watchdog reports cite long-
    standing crises in federal prisons,"
    *https://www.washingtonpost.com/politics/2024/02/23/federal-*
    *bureau-prisons-solitary-confinement-gao-report/*...........................................4

The Washington Post Website, Article – "House bill would shine a
   light on federal prisons' dark problems,"
   *https://www.washingtonpost.com/politics/2024/04/19/federal-
   prison-oversight-bill-house-committee/*.............................................................4

Unites States Sentincing Commission, Amendments to the Sentencing
   Guidelines (Preliminary) dated April 17, 2024,
   *https://www.ussc.gov/sites/default/files/pdf/amendment-
   process/reader-friendly-amendments/202404_prelim-rf.pdf*..............................6

Valerie Wright, *Sentencing Project, Deterrence in Criminal Justice:
   Evaluating Certainty v. Severity of Punishment* (2010) and Sent'g
   Comm'n, *Recidivism and the "First Offender"* at 13-14 (May
   2004)........................................................................................................16

## Preliminary Statement

This Brief is respectfully submitted on behalf of Appellee Conor Brian Fitzpatrick in response to the government's appeal from a sentence imposed in United States District Court for the Eastern District of Virginia, on Fitzpatrick's guilty plea to (1) conspiracy to commit access device fraud, in violation of Title 18, United States Code, Sections 1029(b)(2) and 3559(g)(1); (2) access device fraud (unauthorized solicitation), in violation of Title 18, United States Code, Sections 1029(a)(6) and 2; and (3) possession of illicit images of minors, in violation of Title 18, United State, Code, Section 2252(a)(4)(b) and (b)(2).

The district judge (Brinkema, U.S.D.J.) sentenced Fitzpatrick to a total term of supervised release of twenty years, the first two years of which to be on home arrest with location monitoring; to register as a sex offender and comply with the attendant conditions of registration; to participate in approved mental health treatment; to have no access to the Internet for the first year of his release; and otherwise to time served of about seventeen days.  JA182-88.

## Introduction

Even when district judges exercise discretion to vary substantially from an applicable range under the United States Sentencing Guidelines, it is rare for this Court to intercede, find an abuse of discretion, and require imposition of a greater sentence.  It is even more rare (and perhaps unprecedented) for this Court to

reverse a judge with over fifty-five years of aggregate experience as a district judge, magistrate judge, and federal prosecutor in "among the most difficult cases [she's] seen in quite a while in terms of sentencing, because the interplay between the criminal justice system and the obvious extremely significant mental health issues . . . are very concerning."  JA173.  The district judge's consequent sentence in this case stands in stark contrast to her imposition of substantial terms of incarceration when truly necessitated by application of the statutory sentencing factors.  *See, e.g., United States v. Whitley,* 105 F.4th 62 (4th Cir. 2024); *United States v. Moussaoui,* 591 F.3d 263 (4th Cir. 2010).

On this government's appeal from the district court's imposition of a mostly non-custodial sentence on Fitzpatrick, the government cites a handful of cases where this Court has found that a substantial downward variance constituted an abuse of discretion.  *See* Gov't Br. at 30-32.  As demonstrated herein, however, not one of those cases is remotely similar to Fitzpatrick's case.  For example, the defendant in *United States v. Zuk*, 874 F.3d 398 (4th Cir. 2017), had been clinically diagnosed as a pedophile and sexual sadist; suffered from "mild" Asperger's syndrome "only tangentially connected to [his] grave criminal misconduct;" was "highly functioning compared to most people with autism;" had been an Eagle Scout in high school and made Dean's List at college; and his crime included daily contact with a sixteen year-old boy and direction that the boy abuse his five year-

old cousin "in specific, sadistic ways." *Id.* at 400, 410-12. Fitzpatrick's case is a world apart from Zuk's.

More than the government's reliance on inapposite cases, it failed below to contest facts relied on by the district court and on appeal seeks to engage issues for the first time after depriving the district court of an opportunity to make more fulsome findings as if resolving factual disputes. As one example, the government now cites "program statements" and stated goals of the Bureau of Prisons ("BOP") as proof that the government can effectively treat and safely manage a young, mentally-ill inmate like Fitzpatrick [*see* Gov't Br. at 55-56], but the government below remained silent when the district judge and defense counsel both stated to the contrary [*see* JA174-75, 418] and declined an express invitation to speak [JA180] after the Court imposed sentence, explaining that "this young man . . . in a prison setting . . . would never get the mental health treatment that he needs." JA174; *United States v. Hargrove*, 625 F.3d 170, 183-84 (4th Cir. 2010) (where specific allegation of sentencing error is not made below, review on appeal is for plain error).

As a matter of incontrovertible fact, and despite the government's belated proffer of BOP's program statements, BOP is an agency in crisis, is under fire for failing its core mission to mentally-sound inmates, and is the subject of pending bipartisan legislation for enhanced federal oversight. *See "House Bill Would Shine*

*a Light on Federal Prisons' Dark Problems,"* The Washington Post, Apr. 19, 2024[1]

(reporting that the otherwise bitterly divided Oversight and Accountability

Committee of the House of Representatives voted 41 to 1 to approve the Federal

Prison Oversight Act, H.R. 3019); *see also "Inside the Bureau of Prisons, a federal

agency plagued by understaffing, abuse, disrepair,"* CBS News, June 16, 2024[2];

*"Watchdog reports cite long-standing crises in federal prisons,"* The Washington

Post, Feb. 23, 2024[3]; *"How federal prisons are getting worse,"* The Marshall

Project, Mar. 2, 2024[4].

Likewise, the government below did not contest (nor could it have

reasonably contested) that Fitzpatrick's "extremely significant mental health

issues" were "obvious" [JA 173]; his issues were not independent of or at most

"tangentially connected" to his crime [*see Zuk*, 874 F.3d at 410] but its cause (not

greed); he committed his crime when he was nineteen and twenty years-old ███

████████████████████████████████████████████████████████

---

[1]  Available at *https://www.washingtonpost.com/politics/2024/04/19/federal-prison-oversight-bill-house-committee/*

[2]  Available at *www.cbsnews.com*

[3]  Available at *https://www.washingtonpost.com/politics/2024/02/23/federal-bureau-prisons-solitary-confinement-gao-report/*

[4]  Available at *https://www.themarshallproject.org/2024/03/02/senate-federal-prison-senate-deaths*

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

██████████

Apart from the government's omissions in district court, it perfected its appeal in this Court on July 29, 2024 [Docket No. 28] without mentioning that the United States Sentencing Commission three months earlier had announced an amendment to the Guidelines for young offenders expressly authorizing district judges to fashion precisely the kind of sentence fashioned by the district judge here. The new U.S.S.G. § 5H1.1, effective November 1, 2024 (three days after the scheduled oral argument on this appeal), provides that "in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing . . . [because] [a]ge-appropriate interventions and other protective factors may promote desistance from crime." Amendments to the Sentencing Guidelines, "Youthful Individuals," Apr. 17, 2024.[5]

---

[5] Available at *https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202404_prelim-rf.pdf*

Unlike cases where this Court has criticized district judges who appeared to disagree with Congress that the defendant's crime itself warranted custody [*see, e.g., United States v. Moreland*, 437 F.3d 424, 436-37 (4th Cir. 2006)], or considered a defendant's ability to earn restitution as a viable reason not to impose custody [*United States v. Engle*, 592 F.3d 495 (4th Cir. 2010)], the district judge here expressly acknowledged the seriousness of Fitzpatrick's crime, adopted the government's view of the applicable range under the Sentencing Guidelines, and even sustained the government's view that his violation of a condition of release by post-arrest (non-criminal) use of electronic devices served to deny him points for acceptance of responsibility. Upon consideration of all statutory sentencing factors, the district judge determined that Fitzpatrick's characteristics and "obvious" mental illness favored a substantial downward variance.

Even if another judge might have exercised discretion differently, the district judge in this case had a reasonable basis for the sentence imposed and did not abuse discretion. It is the government, not the district court, which sees wisdom in a sentence predicated - - imprudently and unreasonably and at odds with the Sentencing Commission's new amendment for young offenders - - on one factor to the exclusion of others. If the district judge erred at all, it was because she did not anticipate the government's new arguments on appeal and did not fulsomely address them as she might have otherwise. If the Court deems it necessary to take

action other than affirmance, it should do no more than remand the case to assure the procedural reasonableness of the sentence, as it has done in other cases. *See, e.g., United States v. Provance,* 944 F.3d 213, 218-20 (4th Cir. 2019).

<u>Issue Presented</u>

Especially in light of the United States Sentencing Commission's recent amendment expressly authorizing district judges to consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing for young offenders in appropriate cases, whether a district judge has discretion to grant a substantial downward variance in "among the most difficult cases [she's] seen in quite a while in terms of sentencing" because the defendant, who committed his crime when he was nineteen and twenty years-old ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

<u>Statement of the Case</u>

*A.  The Connection Between Fitzpatrick's Mental Illness and His Crime*

When Fitzpatrick was arrested on March 26, 2023 [PSR at ¶ 23], he was twenty years-old.  *See* PSR at JA231 (noting his date of birth as September 26, 2022).  According to the information to which Fitzpatrick pled guilty, he committed his crimes between March 2022 and March 2023, a period beginning when he was nineteen years-old and straddling his twentieth birthday.  JA019-022.

Fitzpatrick committed his crimes exclusively on the Internet.  As summarized in the accusatory instrument, the allocution at Fitzpatrick's guilty plea, and the government's attendant recitation of its proof, Fitzpatrick committed his crimes by working with five or six others (whom he only knew on the Internet) by playing a principal role in designing and administering a website known as BreachForums that enabled users to traffic in stolen payment card data, bank routing and account numbers, social security numbers, and login credentials including usernames and associated passwords.  JA020-21.  Though Fitzpatrick supervised others and offered a "middleman" service to facilitate buying and selling among the site's 300,000 members, he never met any of his co-conspirators or customers in person.  JA067-083, JA 118-39.  The government's inspection of Fitzpatrick's laptop established his possession of 26 files containing videos

depicting minors (including some under the age of twelve) engaged in sexually explicit conduct.  JA019-022.

███████████████████████████████████

███████████████████████████████████

████████████

Fitzpatrick did not commit his cybercrime for financial gain. Though the total proceeds from the conspiracy amounted to $698,714 [*see* PSR ¶ 13, JA286], Fitzpatrick used his share of ill-gotten gain only to buy computer equipment and domains to maintain the website, as the government acknowledged. JA160-61.

███████████████████████████████

████████████████████████████

████████████████████████████

████████████████

██████████████████████████████

███████████████████████████

█████████████████████████████

████████████████████████████████

██████████████████████████

███████████████

███████████████████████████
████████████████████████████████
██████████████████████████████
████████████████████████████████
██████████████████████████████
████████████████████████████







*B. The Parties' Competing Recommendations for Sentencing*

Citing Fitzpatrick's "immense contributions to enabling widespread cybercrime," the government recommended that the Court sentence Fitzpatrick to a

term of imprisonment of 188 months [JA 272, 280, 282], within the applicable

range of 188 to 235 months.  *See* PSR ¶¶ 97, 252.  The government argued that 188

months was necessary to address the "scope, breadth, and brazenness" of the

crime, the risk of recidivism, and the need to deter others.  *See* JA282-90.



While the Sentencing Commission did not announce its above-cited amendment to Section 5H1.1 (expressly authorizing non-custodial sentences for young defendants in appropriate cases) until three months after Fitzpatrick's sentencing, ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

*C. The Sentencing*

At sentencing, the district judge adopted the PSR's estimated range under the Guidelines and agreed with the government that Fitzpatrick's violation of the conditions of his release served to deny him points for acceptance of responsibility. JA153-55. She described the conduct as "very serious and very bad" [JA173] and said that she "fully recognizes the seriousness of this criminal conduct." JA174.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] the government urged a sentence of 188 months predicated exclusively on the seriousness of the crime, is view that only significant custody served to deter others, and the purported need to protect the community from Fitzpatrick. JA154-62. [REDACTED]

[REDACTED] the government was "sympathetic and sensitive

to some of the matters . . . and may feel personal compassion for some of those issues, but the unfortunate, inescapable reality is that an examination of his conduct over the course of time reflects he is a danger to the public." JA159. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the government tacitly acknowledged it: "He may be, according to some of the letters, shy, unaggressive, harmless in person, but he is confident, he is aggressive, he is dangerous" online. JA160.

As noted above, the district judge said that the case was "among the most difficult cases [she's] seen in quite a while in terms of sentencing, because the interplay between the criminal justice system and the obvious extremely significant mental health issues that this young man has are really quite concerning . . . . My concern is taking a 21-year-old young man who is probably closer to a 16 or 17-year-old in terms of actual maturity, I think the mental health records clearly would show that, and someone with the very clear documented mental health history that we have - -  this is not somebody who, you know, post criminal conduct all of a sudden develops mantal health issues.  I mean, this young man has had them for years." JA173.

The district judge said that Fitzpatrick "would never get the mental health treatment that he needs," "would clearly be a potential victim," would be "exposed

to all kinds of problems," and "would just be a disaster" in general population. JA174-75. The government never disagreed with the district court or otherwise expressed a contrary view and declined to speak when invited to do so after the district judge expressed her concerns about incarcerating Fitzpatrick. JA180.

Argument

While this Court scrutinizes substantial downward variances from the advisory range under the Sentencing Guidelines, its review is limited to ensuring that the district court committed no significant procedural error, such as failing to or improperly calculating the range, failing to consider the statutory sentencing factors, predicating a sentence on clearly erroneous facts, or failing adequately to explain the chosen sentence. This Court gives due deference to the district judge's decision that the statutory sentencing factors in their totality justify the extent of the variance. The Court's view that a different sentence might be appropriate is not alone a sufficient basis to vacate the district court's chosen sentence. *See Zuk*, 874 F.3d at 409; *Provance*, 944 F.3d at 219 ("We will generally find a variance sentence reasonable when the reasons justifying the variance are tied to § 3553(a) and are plausible.").

The government's advocacy that the district judge should have imposed a different sentence is stymied by its failure to challenge the facts on which her chosen sentence was predicated. The government suggests that Fitzpatrick unfairly

or improperly submitted ██████████████████████████ just three days

before sentencing [*see* Gov't Br. at 22], but three days before sentencing was the

deadline for sentencing submissions, including the government's.  *See* JA005-06

(Docket Nos. 65-69).  The government waived any claim of unfair surprise or

undue prejudice by not seeking an adjournment of sentencing ████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

Far from challenging the experts' recommendations, the government

expressed sympathy and compassion for Fitzpatrick's mental health challenges

[JA159] but argued that the Court should impose a sentence based on the

seriousness of the crime rather than the undisputed truth of ████████████

██████████████████████████████████████████. Perhaps a different judge might have agreed with the government and imposed a greater sentence, but the district judge's sentence was within the range of reasonable discretion and was predicated on undisputed facts ████████████████████████████

More, the district judge's sentence accords with the Sentencing Commission's new amendment to Section 5H1.1, which will be effective on November 1, 2024, three days after the scheduled oral argument of the government's appeal. The amendment supports the district judge's chosen sentence by authorizing punishment "other than imprisonment" where deemed sufficient for a youthful offender in an appropriate case. It is difficult and unpersuasive for the government to argue that the district judge abused discretion when the Sentencing Commission expressly validates her approach.

The Commission's rationale for the new amendment echoes Fitzpatrick's evaluations. As the Commission's policy statement explains:

> Certain risk factors may affect a youthful individual's development into the mid-20s and contribute to involvement in criminal justice systems, including environment, adverse child experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

U.S.S.G. § 5H1.1. ███████████████████████████████████

██████████████████████████████████████████████
███████████████████████████████████████████



  The district judge's sentence is fully grounded in research on human development ████████████████████████ generally accepted by the Sentencing Commission.

As noted above, the government waived its claim that BOP can treat and safely manage ████████████ *See Hargrove*, 625 F.3d at 183-84.  If BOP can truly do so, the government (as part of the same Department of Justice as BOP) had unique access to such information but declined to speak when the Court and defense counsel stated to the contrary even after the district judge expressed concerns about Fitzpatrick's prospective plight in a BOP facility and invited the government to speak.  More, and with due respect to the prosecutors in this case, no active practitioner in federal criminal justice could have a viable basis for claiming that BOP can treat and safely manage ████████████  As cited above, BOP has become notorious for its failures to discharge even its core obligations, and multiple legislators from both parties have made concerns about BOP a legislative priority.  *See, e.g.*, *"Senators clash with US prisons chief over*

*transparency, seek fixes for problem-plagued agency,"* AP News, Sept. 13, 2023;[6]

*"Durbin, Warren, Ossoff Lead Colleagues in Raising Concerns With Wellpath Over Inadequate Health Care Services in Prisons and Jails Nationwide,"* RiverBender.com, Dec. 20, 2023;[7] *Hearing on Oversight of Federal Bureau of Prisons*, C-span.org, Sept. 29, 2022. But if these prosecutors had information about BOP's capacity to treat and manage inmates like Fitzpatrick to the contrary, it was incumbent on them to say so in district court and present their evidence, rather than wait for appeal to ask this Court to make findings of fact about BOP's true capacity and assert that the district judge's concerns were "unsupported by the record and reality." *See* Gov't Br. at 30.

The government complains that the district court's focus on Fitzpatrick's mental illness ignored the need for general deterrence and risks disparity with sentences imposed for similar crimes. But the government's quarrel does not establish the unreasonableness of the district judge's approach or an abuse of discretion, but rather the government's dismay that the district judge placed less weight on the government's preference for custody rather than the circumstances

---

[6] Available at *https://apnews.com/article/federal-prisons-colette-peters-senate-judiciary-committee-ca053cfe5170a755771392498153a420*

[7] Available at *https://www.riverbender.com/articles/details/durbin-warren-ossoff-lead-colleagues-in-raising-concerns-with-wellpath-over-inadequate-health-care-services-in-prisons-and-jails-nationwide-69832.cfm*

of Fitzpatrick's crime, the government's inability to manage Fitzpatrick safely in custody, and developmental deficiencies even greater than the general ones attendant youth that the Commission recognizes may favor a non-custodial sentence. Even before the amendment, and even before the Guidelines were deemed to be advisory and not mandatory, the Commission authorized judges to consider whether "considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.1. Such downward departures for so-called "non-heartland" cases were historically permitted when the Guidelines were mandatory, and the record here would have justified the district court's sentence even under the earlier sentencing regime.

More, the district judge had a basis that was at least reasonable if not empirically correct to reject the government's attempt to equate Fitzpatrick with an older, mentally-sound offender sufficiently matured and developed to act with the venality or to be truly "unrepentant and defiant" as suggested by the government. *See, e.g.,* Gov't Br. at 28-29, 41-43. Among other facts presented to the district judge to which the government did not object, ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

For all of these reasons, this case bares no real resemblance to cases where the Court has found a sentence to be substantively unreasonable. As discussed above, the government's attempt to equate Fitzpatrick with the defendant in *Zuk*, "a pedophile, a sadist, and a recividist who possessed more than 13,000 images of child pornography and who directed a 16-year-old boy to sexual abuse of his five-year-old-cousin for [his own] sexual gratification" [*Zuk*, 874 F.3f at 407] wildly misses the mark, especially as "no expert testified that Zuk's medical condition caused his criminal conduct" [*id.* at 411] and was at most "questionably related" to Zuk's crime. *Id.* at 410.

Similarly inapposite are *Moreland*, 437 F.3d at 436-37, where the district judge appeared to disagree with Congress that the defendant's crime itself warranted custody, and *Engle*, 592 F.3d at 495, where the district judge considered a defendant's ability to earn restitution as a viable reason not to impose custody, meaning that "rich tax-evaders will avoid prison, but poor tax-evaders will almost certainly go to jail. Such an approach, where prison or probation depends on the defendant's economic status, is impermissible." *Id.* at 505. *See also United States v. Howard*, 773 F.3d 519 (4th Cir. 2014) (on a defendant's appeal, the Court agreed that the district judge improperly sentenced the defendant as a *de facto* career

offender); *United States v. George*, 2021 WL 5505404 at *12 (4th Cir. Nov. 24, 2021) ("the district court's findings, when viewed as a whole, are also inconsistent with the weight of the evidence presented at trial and impossible to reconcile with the facts implicitly adopted by the jury.").

As for disparity, application of both the older and newer incarnations of Section 5H1.1 risks numerical disparities with sentences imposed on other offenders convicted of the same crime, but the numbers do not offend the objectives of sentencing if the totality of the circumstances establishes that the difference is warranted. The government purports to quarrel with the district judge because she gave too much weight to Fitzpatrick's circumstances, but the government's quarrel in fact is with the authority of a district judge to reject the government's institutional view of custody as a one-size-fits-all cure-all and impose a sentence predicated on undisputed and non-heartland facts which she deems sufficient to advance the objectives of sentencing.

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████

Respect for the law sufficient to deter is in the eye of the beholder. Imprisoning young, mentally-ill defendants like Fitzpatrick is offensive to a broad swath of the community just as much as a term of supervised release of twenty years, a year of home arrest, and registration as a sex offender and its attendant requirements may offend a prosecutor's view that respect for the law sufficient to deter is inextricably tied to the duration of custody. *See* Gov't Br. at 46-47. The purpose of sentencing in any particular case is not to resolve age-old debates about crime and punishment but to permit a district judge to exercise discretion as she sees fit as long as her reasons are "plausible" and tied to Section 3553(a). *Provance*, 944 F.3d at 219. The district judge's sentence of Fitzpatrick amply satisfies that standard.

## Conclusion

For these reasons, the district judge's sentence should be affirmed.

Alternatively, if the Court deems it necessary to take action other than affirmance, it should do no more than remand the case to assure the procedural reasonableness of the sentence.

Respectfully submitted,

/s/ Peter Neil Katz
Peter Neil Katz
Law Offices of Peter Katz, LLC
116 Village Boulevard, 2nd Floor
Princeton, New Jersey 08540
(609) 734-4380

/s/ Andrew J. Frisch
Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000

Attorneys for Conor Brian Fitzpatrick

<u>Certificate of Compliance with F.R.A.P. 32(a)</u>

I hereby certify that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 6,428 words, excluding the parts of the brief exempted under Fed. R. Civ. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportional typeface using Microsoft Word in 14 point font Times New Roman style.

Dated:  September 9, 2024

Respectfully submitted,

<u>/s/ Peter Neil Katz</u>
Peter Neil Katz
Law Offices of Peter Katz, LLC
116 Village Boulevard, 2nd Floor
Princeton, New Jersey 08540
(609) 734-4380

<u>/s/Andrew J. Frisch</u>
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000

Attorneys for Conor Brian Fitzpatrick

**Certificate of Service**

I certify that I caused this brief to be filed electronically using the CM/ECF system.

Dated: September 9, 2024

/s/ Peter Neil Katz
Peter Neil Katz
Law Offices of Peter Katz, LLC
116 Village Boulevard, 2nd Floor
Princeton, New Jersey 08540
(609) 734-4380

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000

Attorneys for Conor Brian Fitzpatrick